UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH DELFRATE,

    Plaintiff,

vs.

LIBERTY MUTUAL INSURANCE COMPANY

    Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Liberty Mutual Insurance Company ("LMIC"), by and through its undersigned counsel, hereby moves to dismiss all counts of Plaintiff's complaint ("Complaint"). In Count I, Plaintiff alleges that LMIC breached its contract with Plaintiff. In Count II, Plaintiff alleges that LMIC is liable for intentional infliction of emotional distress because it failed to timely process and pay Plaintiff's claim under his homeowner's policy. Both counts must be dismissed because Plaintiff's insurance policy was not with LMIC, but with Liberty Mutual <u>Fire</u> Insurance Company, an entity that is affiliated with, but separate from, LMIC. In addition, Count II must be dismissed because it is untimely, and because a mere delay and denial of an insurance claim, even if incorrect, cannot form the basis of a claim for intentional infliction of emotional distress as a matter of law. In further support, Liberty Mutual states as follows.

## FACTUAL ALLEGATIONS

According to the allegations of the Complaint, Plaintiff's home was insured by LMIC. See Complaint at ¶ 3. However, Plaintiff attached his insurance policy as Exhibit A, and the declaration pages as Exhibit B to the Complaint. All the declaration pages provide that

{M2868829;3}

Plaintiff's home was insured by Liberty Mutual Fire Insurance Company, not LMIC. See Complaint, at Ex. B. Plaintiff alleges that his home sustained hurricane damages in August and September of 2004, and that after making some repairs, Plaintiff reported the claim to LMIC in January 2005, or shortly thereafter. Id. at ¶¶ 4-6. Plaintiff then alleges that in April 2005, his home sustained additional damage as a result of extensive rains, at which point he "again called Liberty Mutual to report damages and request payments under the policy to do repairs." Id. at ¶ 8. Plaintiff also alleges that at this time, there was extensive damage inside the house, and LMIC sent inspectors out, but that it did not pay benefits to replace the roof or remediate mold. Id. at ¶ 9. Plaintiff further alleges that in May 2005, he retained a contractor who started the work on the roof in July 2005. Id. at ¶ 10. Plaintiff alleges that his health was poor and his finances were limited, which eventually led to his bankruptcy and a foreclosure of his home. Id. at ¶¶ 12-15. Plaintiff also alleges that Liberty Mutual knew of his situation and of his inability to resolve the problems related to his home without payments under the policy, but did not make timely payments anyway. Id. at ¶ 16. Based upon these allegations, Plaintiff has asserted causes of action for breach of contract (Count I) and intentional infliction of emotional distress (Count II) against LMIC.

## ARGUMENT

The Complaint must be dismissed in its entirety because Plaintiff has sued LMIC, instead of suing his insurer, Liberty Mutual Fire Insurance Company, which belongs to the same corporate family as LMIC, but is a separate and independent corporate entity. In addition, Plaintiff's claim for intentional infliction of emotional distress (Count II) must be dismissed for two reasons. First, Plaintiff fails to state a claim for intentional infliction of emotional distress as

a matter of law. Second, even if Count II states a claim, the Court lacks jurisdiction over it because it is barred by the applicable statute of limitations.

### I. COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF HAS SUED THE WRONG PARTY

If documents attached to a complaint negate a claim, the complaint should be dismissed. See e.g., Construction & Funding Services v. Star Cruises, 174 F. Supp. 2d 1320, 1326 (S.D. Fla. 2001); see also Century Land Development, L.P v. FFL Development, Case No. 07-14377-CIV-MOORE, 2008 WL 1850753, at *3 (S.D. Fla. Apr. 24, 2008) *quoting* Harry Pepper and Associates, Inc. v. Lasseter, 247 So. 2d 736, 736-737 (Fla. 3d DCA 1971) ("[if there] is an inconsistency between the general allegations of material facts in the ... complaint and the specific facts revealed by the exhibit [attached or referred to in the complaint] ... they have the effect of neutralizing each allegation as against the other, thus rendering the pleading objectionable."). In this case, the insurance policy attached to the Complaint plainly contradicts the allegations that LMIC is a party to the policy. In fact, all the declaration pages clearly show that "Liberty Mutual Fire Insurance Company" is the insurer who issued the policy to Plaintiff. See Exhibit B to Complaint. Hence, Plaintiff has sued the wrong party. As a result, the Complaint fails to state a claim against LMIC and must be dismissed in its entirety, because LMIC did not issue Plaintiff's policy, has no connection to this lawsuit, and Plaintiff has no standing to sue LMIC.

### II. COUNT II MUST BE DISMISSED BECAUSE IT IS UNTIMELY AND FAILS TO STATE A CLAIM

In addition to the reasons set forth above, LMIC also states that Count II must be dismissed because it fails to state a claim for intentional infliction of emotional distress, and because it is untimely.

### A. Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress

Plaintiff fails to state a claim for intentional infliction of emotional distress as a matter of law. While Florida law recognizes the tort of intentional infliction of emotional distress, see Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277 (Fla. 1985), the tort is not applicable to Plaintiff's run-of-the-mill insurance contract dispute. To prove intentional infliction of emotional distress under Florida law, Plaintiff must prove four elements: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the emotional distress; and (4) the distress must have been severe. See Dependable Life Ins. Co. v. Harris, 510 So. 2d 985 (Fla. 5th DCA 1987).

To classify as outrageous conduct, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." McCarson, 467 So. 2d at 278-279 (quoting Restatement (Second) of Torts § 46 Comment (d) (1965)). Whether or not a set of facts rises to the level of intentional infliction of emotional distress is a legal question for the court, rather than a fact-finder, to resolve. See e.g., Gandy v. Trans World Technology Group, 787 So. 2d 116, 119 (Fla. 2d DCA 2001) ("Whether alleged conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a matter of law, not a question of fact."); In re Eastern Airlines, Inc., 629 F. Supp. 307, 311 (S.D. Fla. 1986), *rev'd on other grounds by* Floyd v. Eastern Airlines, Inc., 872 F. 2d 1462 (11th Cir. 1989); Scheller v. American Medical International, Inc., 502 So. 2d 1268, 1271 (Fla. 4th DCA 1987).

In McCarson – the seminal Florida case on the issue – Metropolitan Life ("MetLife") insured Mrs. McCarson, as an employee of her husband's body shop, under a group insurance policy. Subsequently, Mrs. McCarson contracted Alzheimer's and became incapacitated.

Claiming that the condition was pre-existing, MetLife stopped payment of Mrs. McCarson's benefits. Mr. McCarson brought suit, and the court found MetLife in breach of contract and ordered the insurance company to provide coverage pursuant to the contract. After the lawsuit, Mrs. McCarson began to require twenty-four hour a day nursing assistance, for which MetLife was liable under the contract, until the policy lapsed or Mrs. McCarson became eligible for Medicare. After MetLife requested proof that Mrs. McCarson was ineligible for Medicare and received no response, MetLife discontinued payments for the nursing services. Mr. McCarson, once again, brought suit; however, in the meantime, Mrs. McCarson was removed from her home and placed in a total care nursing facility. Her condition deteriorated rapidly, and a few months later she died of a heart attack. Medical testimony indicated that the stress of her new surroundings probably brought about her death. Mr. McCarson, as personal representative, brought suit for wrongful death and intentional infliction of emotional distress.

Upon final appeal, the Supreme Court of Florida held that, even assuming that all disputes of fact were drawn in McCarson's favor, the facts, as presented above, were not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." McCarson, 467 So. 2d at 279. MetLife made the decision to withhold benefits based upon its understanding of the McCarson insurance policy. Mr. McCarson disputed the insurance company's decision and filed a lawsuit. Even though coverage was disputed at the time of the denial and the withholding of the benefits had tragic results, the Court held that McCarson had no cause of action for intentional infliction of emotional distress. See id.

In contrast to McCarson, a number of Florida courts have allowed clams for intentional infliction of emotional distress. However, the common thread in such cases is conduct by an insurer that patently exceeds, *and by far*, the type of conduct present in cases like McCarson and

{M2868829;3}                                    5

this one, which conduct could potentially amount to an improper denial of benefits or mere bad faith, but not more. See e.g., Aguilera v. Inservices Inc., 905 So. 2d 84 (Fla. 2005) (insurer actively prevented medical treatment for insured who was urinating blood and feces; blocked receipt of vital medications; denied requests for emergency care; unilaterally cancelled tests prescribed by physicians; contacted insured without his counsel and urged insured to lie to his counsel; interrupted medical appointments; and precluded emergency surgery for ten months); Liberty Mutual Ins. Co. v. Steadman, 968 So. 2d 592 (Fla. 2d DCA 2007) (complaint alleged that insurer wrongfully delayed payment for lung transplant in the hope that insured would die before the insurer had to pay any money); Dominguez v. Equitable Life Assur. Soc., 438 So. 2d 58 (Fla. 3d DCA 1983), approved 467 So. 2d 281 (Fla. 1985) (claim for intentional infliction of emotional distress recognized where adjuster deceived claimant by knowingly and falsely advising that a physician had determined that claimant was not disabled, convincing claimant to forego claim); Harris, supra (finding that intentional infliction of emotional distress where a disability insurer's adjuster denied claim despite lack of any basis for doing so; called the insured a cheat and a fraud on multiple occasions; told the insured that she had contacts at the Social Security Administration and threatened to report the insured for social security fraud if he persisted in his claim against the insurer; threatened to sue the insured for payments already made if he did not relinquish his claim; and told the insured that the insurer's battery of attorneys could outlast any attorney he might hire).

    Here, even taking all of Plaintiff's allegations as true, Liberty Mutual's conduct was much less egregious than in McCarson, and certainly nowhere close to the level of egregiousness found in cases like Dominguez and Harris. Whereas the insurer's actions in McCarson allegedly resulted in the insured's death, the most that is alleged by Plaintiff in this case is that he was

forced to vacate his home due to the negative effect of mold on his health (but that his health returned to normal after he moved out).[1]  Complaint, at ¶¶ 12-13, 29.  As for Liberty Mutual's role, Plaintiff alleges that Liberty Mutual withheld payments under the policy and that this conduct was calculated to delay and avoid making payments, because Liberty Mutual allegedly knew that, due to his disabilities and financial limitations, there was "not much Plaintiff would do."  Id. at ¶ 28.[2]  Even less so than in McCarson – where the jury found that the insurer was in reckless disregard of the potential harm to the insured – this case involves no more than Liberty Mutual's assertion of its rights in a legally permissible way.  See McCarson, 467 So. 2d at 279.  That is simply not enough to state a claim for intentional infliction of emotional distress.  Rather, the law requires allegations that the insurer "engaged in some outrageous conduct beyond denying of benefits."  Tobkin v. U.S. Life Ins. Co., 2007 WL 2667354, *2 (S.D. Fla. 2007) (dismissing claim for intentional infliction of emotional distress where the insured alleged only that the insurer's denial of the claim knowingly caused him distress).  Here, as in Tobkin, Plaintiff has alleged no conduct at all (not to mention outrageous conduct) beyond improper[3] withholding payments under the policy.  Plaintiff has certainly not alleged the types of actions previously held by Florida courts to rise to the level of outrageousness – threats, extortion, accusations of fraud, interference with emergency medical treatment, deception, etc.  See e.g., Harris, Dominguez, supra.  As explained in McCarson, an insurer denying benefits (even if

---

[1] While Plaintiff's circumstances of having to leave his home are regrettable, such allegations do not rise to the level of outrageousness required to state a claim for intentional infliction of emotional distress.  See Clemente v. Horne, 707 So. 2d 865 (Fla. 3rd DCA 1998) (although the anxiety and stress of being evicted from one's residence and not having alternative housing is understandable, the landlord's conduct in evicting tenant did not rise to the level of outrageousness).

[2] The complaint also contains an allegation that Liberty Mutual frustrated all attempts by Plaintiff to mitigate his losses and to retain and preserve his home and his health.  However, the only factual basis provided by Plaintiff to support this barebones assertion are the same facts that form the basis of the breach of contract claim, which is not enough to state a claim for intentional infliction of emotional distress.  See GEICO Cas. Co. v. Arce, 2009 WL 1298404 (11th Cir. (Fla.) 2009) (Florida only permits tort actions based on acts independent from the acts that breached the contract).

[3] Although the issue is not relevant for the purposes of this motion, Liberty Mutual obviously disputes the allegations that its conduct was in any way improper.

incorrectly, and even if an insured's death results from the denial), based on the terms of an insurance contract, is a far cry from "extreme and outrageous" conduct that would permit a claim for intentional infliction of emotional distress.[4] If Plaintiff is correct that his allegations could rise to the level of intentional infliction of emotional distress, then any denial of an insurance claim could be brought as such by any dissatisfied insured. Florida law, however, does not permit such exaggerated pleading. See Patterson v. Downtown Medical and Diagnostic Center, Inc., 866 F. Supp. 1379, 1383 (M.D. Fla. 1994) ("The standard for outrageous conduct is particularly high in Florida."). Accordingly, Count II of Plaintiff's complaint should be dismissed.

**B.   Plaintiff's Claim for Intentional Infliction of Emotional Distress Is Untimely**

In addition to failing to state a cause of action, Count II must also be dismissed because it is untimely. In Florida, the statute of limitations for intentional torts, including intentional infliction of emotional distress, is four years. Fla. Stat. § 95.11(3)(o). In this case, Plaintiff alleges that he reported the claim to Liberty Mutual in January 2005 and then again in April 2005, which is when Liberty Mutual allegedly denied the claim. See Complaint at ¶¶ 6-10. As this denial appears to form the basis for Plaintiff's intentional infliction of emotional distress claim, and because the Complaint does not provide a time frame for any other interactions between the parties, April 2005 is the latest possible date set forth in the Complaint on which the infliction of emotional distress claim accrued. Accordingly, the latest that Plaintiff could have

---

[4] The conduct of the insurer in McCarson caused the death of the insured, but the Court confirmed that the conduct still was not so outrageous so as to justify a claim for intentional infliction of emotional distress. In the instant case, Plaintiff alleges that as a result of its denial of benefits under the policy, Liberty Mutual is liable for "past and future medical bills, past and future pain and suffering, permanent aggravation of existing conditions and loss of enjoyment of life." Complaint at ¶ 30. These purported damages are not independent grounds to establish the elements of an intentional infliction of emotional distress claim. Rather, these allegations are simply an improper attempt to backdoor tort damages into a breach of contract claim, which is the only claim Plaintiff is entitled to bring under the economic loss rule. See GEICO Cas. Co. v. Arce, 2009 WL 1298404 (11th Cir. (Fla.) 2009) (affirming dismissal of intentional infliction of emotional distress claim against insurer, based on the economic loss rule, where the claim was based on the same factual predicate and incorporated the same factual allegations and the contract-based claim).

filed his claim would have been in April 2009.  See Ross v. Twenty-Four Collection, Inc., 617 So. 2d 428 (Fla. 3rd DCA 1993) (claim for intentional infliction of emotional distress barred as a matter of law where the complaint was filed more than four years after the defendant's actions gave rise to the claim); Baucom v. Haverty, 805 So. 2d 959 (Fla. 2d DCA 2001) (cause of action for intentional infliction of emotional distress accrued when defendant engaged in conduct that gave rise to the claim).  However, the complaint was filed on October 6, 2009.  See Complaint, at Summons.  As a result, Plaintiff's claim for intentional infliction of emotional distress is untimely and must be dismissed.

**WHEREFORE**, LMIC respectfully requests that the Court dismiss Counts I and II of the complaint, and award any further relief that it deems just and reasonable.

Respectfully submitted,

**AKERMAN SENTERFITT**
Attorneys for Defendant
One Southeast Third Avenue, 25th Floor
Miami, FL 33131-1704
Phone: (305) 374-5600
Fax: (305) 374-5095

By: _____
MARK S. SHAPIRO
Florida Bar Number: 894631
E-mail: mark.shapiro@akerman.com
GIDEON REITBLAT
Florida Bar Number: 36388
E-mail: gideon.reitblat@akerman.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent **via U.S. Mail** this 17th day of November 2009, to:

Peter O. Brick, Esq.
*Attorney for Plaintiff*
Brick & Hammond
8624 Government Drive, Suite 101
New Port Richey, FL 34654
(727) 847-3121

_____
Attorney

{M2868829.3}                                10